**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **Timothy West,** | **CASE NO. 1: 18 CV 2694** |
| **Plaintiff,** | **JUDGE PATRICIA A. GAUGHAN** |
| v. | |
| | <u>**Memorandum of Opinion and Order**</u> |
| **Nurse Mitchell,** *et al.*, | |
| **Defendants.** | |

## Background

*Pro se* plaintiff Timothy West, a prisoner incarcerated in the Grafton Correctional Institution (GCI), has filed an *in forma pauperis* civil rights complaint in this matter pursuant to 42 U.S.C. § 1983 against fifteen defendants: the Chair of the Ohio Department of Rehabilitation and Correction (ODCR) medical Collegial Review Committee Andrew Eddy, ODRC Assistant Chief Inspector Karen Stanforth, and thirteen employees and medical staff at GCI, including Warden LaShann Eppinger, Deputy Wardens Ronald Armbruster and Jennifer Gellice, Unit Manager James Wesson, Correctional Counselors Ivan Roberts and Andrew Wuerstner, Nurses Mitchell, Snowden, and Elizabeth Labutta, Health Care Administrator David Hannah, Chief Medical Officer Dr. Janice Douglas, Inspector of Institutional Services Tina Costello, and Rules Infractions Board (RIB) Chairman Lieutenant Diamond. (Doc. No. 1.)

The plaintiff alleges he suffers from ulcerative colitis (UC), a condition that can be "partially alleviated through treatment by administering prednisone." (*Id*. at ¶ 21.) He alleges he had several episodes of UC that were successfully treated with prednisone and that he received other medical restrictions for the condition ("including a 'Cell only' restriction, to

prohibit him from being moved to a dormitory with limited access to a toilet, bottom bunk and bottom range restrictions, as well as, intermittently, a single cell restriction"). (*Id*. at ¶ 22.)

He complains, however, about his medical treatment beginning 2015. He alleges that in 2015, he was unsuccessfully treated with prednisone for a UC "flare up" because he had "contracted some additional form of infection" which was not properly treated by "GCI [m]edical personnel." (*Id* at ¶ 23.) Due to the alleged failure of GCI medical personnel to properly treat his "ancillary infection," the two courses of prednisone he was administered were "unsuccessful" and he was left to "suffer unnecessarily." (*Id*.) During this same time period ("approximately June to July of 2015"), he alleges he was also misdiagnosed by Nurse Snowden for "open and [s]eeping sores in his arm." (*Id*. at ¶ 24.) He alleges that when he went to "GCI Medical" seeking attention for this problem, Nurse Snowden told him his condition was "allergies" and that he should "buy Zyrtec" from the commissary. (*Id*.) This diagnosis was inaccurate. The plaintiff alleges that when he was taken to court for re-sentencing on or about July 31, 2015, he was seen by a nurse practitioner who "was shocked at the way [he] was being treated by GCI Medical personnel." (*Id*. at ¶ 26.) He alleges the nurse practitioner "immediately adjust[ed] his prednisone, provid[ed] appropriate pain medication," and properly diagnosed and treated the sores on his skin as scabies. The plaintiff contends Nurse Snowden "denied" him medical treatment for scabies because she initially refused to schedule him to see the doctor for the problem. (*Id*.)

The plaintiff alleges that "[f]ollowing [his] return from Court, and following several grievances" he made about his access to health care, he was provided "with a single cell restriction" for nine months. (*Id*. at ¶ 27.) He was moved to a dormitory with 266 other

prisoners in June 2016, however, "when the block in which [he] was housed was converted for non-general population use." (*Id.*)  He alleges this dormitory was unsanitary, had "rampant infections," contained "only ten (filthy) toilets," and that he was housed there in violation of his cell-only and single-cell medical restrictions. (*Id.*)  When he complained to "Unit Staff people" about this, he was "verbally abused and ignored" and was "threatened with retaliation based on lies by Defendant Hannah" after family members called the institution to express concern about his well being. (*Id.* at ¶ 28.)

The plaintiff alleges that "[a]pproximately six months later" (therefore, in approximately early 2017), "after multiple episodes and incontinence, constant pain and humiliation, lack of sleep and ability to eat" and "during a heightened UC episode," he contracted C-Diff, a serious infection "rampant" in the dormitory. (*Id.* at ¶ 29.)  He alleges that when he sought medical care for this infection, Defendant Douglas refused to test him.  Instead, he "was given over 1,000 useless and ineffective pills over a 90 day period while infection ran through his system unchecked and undiagnosed, by Defendant Douglas, and when [he] complaint to Defendant Hannah, he was threatened with retaliation if he continued to complain." (*Id.* at ¶ 30.)

He alleges that after he "continued to bleed from his rectum from February through May of 2017," a "Nurse Practitioner who was seeing him for chronic care . . . facilitated a telemed video conference with a doctor at OSU Wexner Medical Center, whereupon [he] was immediately transported as emergent to the OSU Hospital Emergency Room" and diagnosed with C-Diff. (*Id.* at ¶ 31.)  He received multiple days of in-patient care, but upon his return to GCI, he was returned to the dormitory "where the C-Diff infection remained." (*Id.*)

"Upon seeing Nurse Hancock," he was issued cell-only, bottom bunk, and bottom range

restrictions again in June 2017.  (*Id*. at ¶ 32.)  Although he filed multiple grievances to be moved to a cell, "Defendant Hannah tampered with his medical records and removed the restrictions properly placed by NP Hancock," and he was left in the dorm "despite having issues with the sawdust from the arts and crafts construction in the very front of the Dorm" and "despite being repeatedly denied toilet paper in retaliation for his complaints."  (*Id*. at ¶ 33.)

He alleges that in December 2017, Defendant Mitchell "failed to ensure that [a] prescription" for him was refilled, which allegedly caused him to suffer another "UC flare-up." (*Id*. at ¶ 35.)  He contends Nurse Mitchell "admits liability" for this, but that Defendant Eddy also failed "to ensure approval of the prescribed medical care timely."  (*Id*.)  He alleges Nurse Snowden "refused" his request to see a doctor for the UC flare-up and "lied on the paperwork" to claim the plaintiff left the examination before it was completed.  (*Id*. at ¶ 38.)

The plaintiff alleges his medical restrictions were finally reinstated on December 4, 2017, and he was moved out of the dormitory block and into a cell.  (*Id*. at ¶ 36.)  Nevertheless, he alleges that "in continuing retaliation" against him, he was placed in the one cell block in the prison "with the animal programs that houses cats and dogs" even though other cell blocks were available.  He contends he was placed in a cell with animals "deliberately due to the foreknowledge of the defendants of [his] allergies and breathing problems."  (*Id*.)  When he complained to defendants Wesson and Roberts about this, their response was that they had contacted defendant Hannah, who told them there was nothing in the plaintiff's records about allergies or asthma, and they refused to move him.  (*Id*. at ¶ 37.)

The plaintiff further alleges that "on or about January 11, 2018, following the refusal by Defendant Armbruster to do anything about [his] being deprived of medication and being forced

-4-

to cell with animals despite the known health problems being caused thereby," he "was moved back to the dorm by Defendants Roberts and Wesson, who [allegedly] conspired with Defendants Douglas and/or Hannah to have the restrictions removed from his medical files and/or lifted, for the express purpose of placing [him] back into the dorm." (*Id*. at ¶ 39.) He alleges "Defendants Hannah, Douglas, Roberts, and Wesson . . . lied in writing, along with Defendants Costello and Stanforth, [to claim] that there were never any medical restrictions" in his file. (*Id*. at ¶ 40.)

Finally, the plaintiff alleges that in August 2018, Nurse Labutta issued a false conduct report against him when he was admitted to the infirmary for another C-Diff infection and UC flare up, and that she did so in retaliation for his "prior complaints against her attitude and denial of medical care." (*Id*. at ¶ 50.) He alleges Defendant Weurstner conducted a hearing on the charge and denied him "all procedural due process requirements" (*Id*. at ¶ 52); Defendant Diamond presided at his RIB hearing and denied him due process (*Id*. at ¶ 54); Defendant Eppinger refused to hear his appeal after punishment was inflicted (*Id*. at ¶ 55); and Defendant Gellice told him she was the one who ordered his placement in segregation and "would ensure that he never had the opportunity to use the camera footage to prove his innocence." (*Id*. at ¶ 59.)

Based on these allegations, the plaintiff alleges three claims for relief. First, he alleges that defendants Mitchell, Eddy, Snowden, Hannah, Douglas, Costello, Stanforth, and Armbruster acted with "deliberate indifference to [his] serious medical needs" in violation of his rights under the Eighth Amendment. (*Id* at ¶ 63.) Second, he alleges that defendants Roberts, Wesson, Mitchell, Hannah, Snowden, Douglas, Costello, Stanforth, Labutta, Wuerstner,

Diamond, Gillece, and Eppinger all retaliated against him for engaging in the "constitutionally protected" conduct of using "the grievance process." (*Id.* at ¶ 66.) Third, he alleges that defendants Labutta, Wuerstner, Diamond, Eppinger, Costello, and Stanforth deliberately violated his "rights to due process and equal protection" in connection with his prison discipline. (*Id.* at ¶ 68.) He seeks declaratory, injunctive, and monetary relief.

With his complaint, the plaintiff filed a motion to proceed *in forma pauperis* (Doc. No. 2), which the Court has granted by separate order. On February 27, 2019, the plaintiff filed a "Motion to Order Service of [the] Summons and Complaint to All Defendants" (Doc. No. 4) and provided materials necessary for service.

## Standard of Review

Because the plaintiff is proceeding *in forma pauperis* and is seeking redress from governmental officers and employees, the Court must screen his complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and dismiss before service any portion of the complaint that the Court finds is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010). The Court must read the plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept his allegations as true unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Nonetheless, the Court is not required to conjure allegations on his behalf or construct claims for him. *See Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2014). In order to withstand a dismissal for failure to state a claim, the plaintiff's complaint must set forth sufficient factual matter, accepted as true, to state a claim

to relief against each defendant that is plausible on its face. *See Hill*, 630 F.3d at 471 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## Discussion

Upon review, the Court will allow the plaintiff's deliberate indifference claim to go forward as against defendants Snowden, Hannah, and Douglas. A prison official may be held liable under the Eighth Amendment for acting with "deliberate indifference toward conditions at the prison that created a substantial risk of serious harm to an inmate." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000), citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To make out a constitutional deliberate-indifference claim, a prisoner must demonstrate objective and subjective components. He must show both that he is incarcerated under conditions posing a "substantial risk of serious harm" to his health or safety, and that the prison official in question had "a sufficiently culpable" subjective state of mind. *See id.* To satisfy the subjective component, the prisoner must show that the defendant "perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded the risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

The Court finds that the plaintiff's allegations, liberally construed, are sufficient to suggest that defendants Snowden, Hannah, and Douglas knew of serious risks to the plaintiff's health or safety, yet consciously disregarded those risks by failing to provide him medical care or by requiring that he be housed in conditions that presented serious risks to his health.

The Court, however, does not find that the plaintiff has alleged plausible deliberate indifference claims against any of the remaining defendants. The only specific allegations the plaintiff makes as to defendants Mitchell and Eddy are that they failed on one occasion to

provide or approve a refill of prescription medication for his chronic UC. (*See* Doc. No. 1 at ¶ 35.) While such allegations may suggest negligence, they do not rise to the level of deliberate indifference under an Eighth Amendment claim. *See, e.g, Jennings v. Al-Dabagh*, 97 F. App'x 548, 549-50 (6th Cir. 2004) ("allegations of medical malpractice or negligent diagnosis and treatment" are insufficient to state a deliberate indifference claim).

Further, the plaintiff's allegations as to defendants Armbruster, Costello, and Stanforth are so vague, unclear, and conclusory that they fail to meet basic pleading requirements or suggest plausible claims. *See Iqbal*, 556 U.S. at 678. It appears the plaintiff contends these defendants denied his grievances in connection with his medical care or housing, or were responsible for overseeing GCI medical or other personnel. A supervisory official cannot be liable under § 1983 solely on these bases. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Accordingly, the plaintiff's first claim for relief may proceed as against defendants Snowden, Hannah, and Douglas, but it will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A as against defendants Mitchell, Eddy, Armbruster, Costello, and Stanforth.

The Court will also allow the plaintiff's second claim for relief alleging retaliation to go forward as against defendants Hannah, Wesson, Roberts, and Douglas. Prisoners have a right under the First Amendment to engage in protected conduct without retaliation. To establish a claim, a plaintiff must show that (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between the protected conduct and the adverse action taken. *Smith v. Yarrow*, 78 F. App'x 529, 539 (6th Cir. 2003).

Upon review, the Court finds that the plaintiff has alleged facts sufficient to support

plausible retaliation claims as against defendants Hannah, Wesson, Roberts, and Douglas because plausible inferences could be drawn from the facts the plaintiff has alleged that these defendants made decisions or took actions against him regarding his housing or medical care because he filed grievances and complaints. However, the Court does not find that the plaintiff has alleged plausible retaliation claims against defendants Snowden, Costello, Stanforth, Labutta, Wuerstner, Diamond, Gillece, and Eppinger. Although the plaintiff contends all of these defendants engaged in conduct or took actions that were adverse to him, he has not alleged cogent facts in his complaint supporting plausible inferences that they did so because he filed grievances or otherwise engaged in protected conduct. "[C]onclusory allegations of retaliatory motive unsupported by material facts will not be sufficient to state . . . a claim." *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005). The Court finds that the plaintiff's retaliation claims against defendants Snowden, Costello, Stanforth, Labutta, Wuerstner, Diamond, Gillece, and Eppinger are conclusory and insufficient to make out the third element required for a claim.

Accordingly, the plaintiff's second claim for relief may proceed as against defendants Hannah, Wesson, Roberts, and Douglas, but it will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A as against the remaining defendants.

Finally, the Court finds that the plaintiff's third claim alleging due process and equal protection violations fails to state a claim and must be dismissed as against all defendants.

First, the plaintiff has not alleged facts suggesting he was subjected to prison discipline implicating constitutional due process protections. Prison discipline triggers constitutional due process when it constitutes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). The Sixth

Circuit has made clear that the prison discipline suggested in the plaintiff's complaint (*i.e*, a conduct charge against a prisoner leading to an RIB hearing and resulting in placement in disciplinary segregation) does not constitute an "atypical and significant hardship" on an inmate triggering due process protections. *See, e.g., Williams v. Lindamood*, 526 F. App'x 559 (6th Cir. 2013) (holding that prisoner's placement in administrative segregation on the basis of findings of prison disciplinary board were insufficient to trigger due process); *Ford v. Harvey*, 106 F. App'x 397 (6th Cir. 2004) (placement of prisoner in disciplinary confinement did not implicate constitutional due process concerns where placement was not accompanied by a withdrawal of good time credits and was not for a significant period of time).

Further, prisoners have "no constitutionally protected immunity from being wrongly accused." *Jones v. McKinney*, 172 F.3d 48, 1998 WL 940242, at *1 (6th Cir. 1998). Thus, "the filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable pursuant to § 1983." *Mujihad v. Harrison*, 172 F.3d 49, 1998 WL 940243, at *2 (6th Cir. Dec. 23, 1998)

Accordingly, the plaintiff has alleged no plausible due process claim against any defendant relating to his prison discipline.

Second, he has not alleged any plausible equal protection claim. Inmates are not a suspect class, *Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005), and a prisoner asserting a violation of equal protection must demonstrate that he was treated differently from others similarly situated, and that the different treatment was not rationally related to any legitimate government interest. *Heard v. Quintana*, 184 F. Supp.3d 515, 522 (E.D. Ky. 2016). The plaintiff has not made such allegations in his complaint.

**Conclusion**

Accordingly, for the reasons stated above, the plaintiff's action shall proceed only as against Snowden, Hannah, and Douglas with respect the plaintiff's First Claim for Relief, and only as against defendants Hannah, Wesson, Roberts, and Douglas with respect to the plaintiff's Second Claim for Relief. The plaintiff's complaint is otherwise dismissed as against all defendants pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

In light of this ruling partially dismissing the plaintiff's complaint, the plaintiff's "Motion to Order Service of Summons and Complaint to All Defendants" (Doc. No. 4) is granted only with respect to defendants Snowden, Hannah, Wesson, Roberts, and Douglas and is otherwise denied.

In accordance with this Order, the Clerk's Office is directed to forward the appropriate documents to the U.S. Marshal for service of process on defendants Snowden, Hannah, Wesson, Roberts, and Douglas, and **a copy of this Order shall be included in the documents to be served on these Defendants**.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge
Dated: 3/25/19                                             Chief Judge