## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| Timothy West, | ) | CASE NO. 1: 18 CV 2694 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | Memorandum of Opinion and Order |
| Nurse Mitchell, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### Introduction

This matter is before the Court upon defendants Hannah, Douglas, Wesson, Roberts, and

Snowden's Motion for Summary Judgment (Doc. 31).  This is a § 1983 case filed by an

incarcerated plaintiff.  For the following reasons, the motion is UNOPPOSED and GRANTED.

### Facts

*Pro se* plaintiff Timothy West, a prisoner incarcerated in the Grafton Correctional

Institution (GCI), filed an *in forma pauperis* Complaint pursuant to 42 U.S.C. § 1983 against

fifteen defendants:  the Chair of the Ohio Department of Rehabilitation and Correction (ODCR)

medical Collegial Review Committee Andrew Eddy, ODRC Assistant Chief Inspector Karen

Stanforth, and thirteen employees and medical staff at GCI, including Warden LaShann

Eppinger, Deputy Wardens Ronald Armbruster and Jennifer Gellice, Unit Manager James

Wesson, Correctional Counselors Ivan Roberts and Andrew Wuerstner, Nurses Mitchell,

Snowden, and Elizabeth Labutta, Health Care Administrator David Hannah, Chief Medical

Officer Dr. Janice Douglas, Inspector of Institutional Services Tina Costello, and Rules

Infractions Board (RIB) Chairman Lieutenant Diamond.

By prior Memorandum of Opinion and Order, the Court allowed plaintiff's deliberate indifference claim to go forward as against defendants Snowden, Hannah, and Douglas.   The Court also allowed plaintiff's claim for retaliation to go forward as against defendants Hannah, Wesson, Roberts, and Douglas.  The Court dismissed the claim for due process and equal protection as against all defendants.  The following allegations relate to the claims against the remaining defendants.

Plaintiff suffers from ulcerative colitis (UC), a condition that can be "partially alleviated through treatment by administering prednisone."  He had several episodes of UC that were successfully treated with prednisone and he had received other medical restrictions for the condition (including a "cell only" restriction, to prohibit him from being moved to a dormitory with limited access to a toilet, bottom bunk and bottom range restrictions, as well as, intermittently, a single cell restriction).

He has complaints about his medical treatment beginning in 2015.  He was unsuccessfully treated with prednisone (which left him to suffer unnecessarily) for a UC flare up because he had contracted some additional form of infection which was not properly treated by GCI medical personnel.  During this same time period (around June to July 2015), he was misdiagnosed with allergies by Snowden for open and seeping sores in his arm.  Around July 31, 2015, he was seen by a nurse practitioner who "was shocked at the way [he] was being treated by GCI Medical personnel," and who adjusted his prednisone, provided appropriate pain medication, and properly diagnosed and treated the sores on his skin as scabies. Snowden denied him medical treatment for scabies because she initially refused to schedule him to see the doctor for the problem.

-2-

After several grievances about his access to health care, plaintiff was provided with a single cell restriction for nine months.  But, in June 2016, he was moved to a dormitory with 266 other prisoners. The dormitory was unsanitary, had "rampant infections," contained "only ten (filthy) toilets," and he was housed there in violation of his cell-only and single-cell medical restrictions.  When he complained to "Unit Staff people," he was "verbally abused and ignored," and was threatened with retaliation based on Hannah's lies after his family members called GCI.    In early 2017, "after multiple episodes and incontinence, constant pain and humiliation, lack of sleep and ability to eat" and "during a heightened UC episode," he contracted C-Diff, a serious infection "rampant" in the dormitory.  When he sought medical care for the infection, Douglas refused to test him.  Instead, he was given ineffective pills over a 90 day period while the infection went undiagnosed. When he complained to Hannah, he was threatened with retaliation.

After he continued to bleed from his rectum from February through May of 2017, a nurse practitioner facilitated a video conference with a doctor at OSU, which resulted in his being immediately transported to the hospital where he was diagnosed with C-Diff.  He received multiple days of in-patient care, but he was then returned to the dormitory at GCI where the C-Diff infection remained.

He was issued cell-only, bottom bunk, and bottom range restrictions again in June 2017.  Although he filed multiple grievances to be moved to a cell, Hannah tampered with his medical records and removed the restrictions.  He was left in the dorm and repeatedly denied toilet paper in retaliation for his complaints.

In December 2017, Snowden refused his request to see a doctor for a UC flare-up and

"lied on the paperwork" to claim the plaintiff left the examination before it was completed.

Plaintiff's medical restrictions were reinstated on December 4, 2017, and he was moved out of the dormitory block and into a cell.  But, in continuing retaliation, he was placed in the one cell block in the prison that houses cats and dogs which aggravated his allergies and breathing problems.  When he complained to Wesson and Roberts, they refused to move him because Hannah indicated there was nothing in his records about these conditions.

On January 11, 2018, he was moved back to the dorm by Roberts and Wesson, who conspired with Douglas and Hannah to have the restrictions removed from his medical files. (Compl.)

The remaining defendants submit the medical records, grievance records, the movement history (move sheet), and the declarations of Hannah and Wesson.

Hannah's declaration states the following.  He was Health Care Administrator (HCA) at GCI from 2013- May 2019. Plaintiff's claims that cell restrictions were ignored relating to his medical restrictions are without merit.  Cell restrictions at GCI are issued and ordered by Advanced Level Providers (ALPs) and not HCAs.  At no point were cell restrictions ordered and not followed, or otherwise ignored during 2016-2018.  Hannah did not tamper with his medical records or alter any orders given by medical staff concerning medical treatment.  The medical records are stored electronically, and cannot be altered because they are "locked to editing." If plaintiff had requested a cell restriction which was denied, the decision was made by medical staff based on assessments of plaintiff's specific medical needs. In his role as HCA, Hannah did not determine an inmate's cell restriction or cell location.

Wesson's declaration states the following.  He has been employed at GCI for 7 years,

and as the Unit Manager of the A Unit for the last 4 years. The records indicate that plaintiff was housed in the A Unit for about 30 days from December 2017 through January 2018.  The A Unit houses dogs, but only inmates opting to be placed in the dog program will be celled with a dog. Medical staff is responsible for making orders regarding special housing requirements for medical restrictions. Neither Wesson nor Ivan Roberts had control over plaintiff's medical restrictions. Wesson never tampered with plaintiff's medical records, or removed or altered any orders given by medical staff concerning his medical restrictions.  The medical records are stored electronically and cannot be altered. If plaintiff was denied a requested cell restriction regarding his housing in the Unit, this would have been determined by medical staff based on an assessment of medical needs.  According to the move sheet, plaintiff was moved to the D Unit which has a dormitory setting.  Bathrooms are located near the inmate's bed- around 15 to 30 seconds walking distance.

This matter is now before the Court upon defendants Hannah, Douglas, Wesson, Roberts, and Snowden's Motion for Summary Judgment.

### Standard of Review

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file,

> together with affidavits," if any, which it believes demonstrates
> the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution

will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate

that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip*

*Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993).  The nonmoving party may not simply rely on

its pleading, but must "produce evidence that results in a conflict of material fact to be solved

by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts

must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical*

*Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence

in support of the plaintiff's position will be insufficient; there must be evidence on which the

jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial

does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d

937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Moreover, if the evidence is "merely

colorable" and not "significantly probative," the court may decide the legal issue and grant

summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

## **Discussion**

The remaining defendants move for summary judgment as to all claims still pending

against them.  Plaintiff has not opposed the motion.  "Even where a motion for summary

judgment is unopposed, a district court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." *FTC v. E.M.A. Nationwide, Inc*., 767 F.3d 611, 630 (6th Cir. 2014).   If the motion and supporting materials show that the movant is entitled to it, summary judgment is appropriate. Fed.R. 56(e)(3).

### (1) Deliberate Indifference (Snowden, Hannah, and Douglas)

A prison official may be held liable under the Eighth Amendment for acting with "deliberate indifference toward conditions at the prison that created a substantial risk of serious harm to an inmate." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000), citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To make out a constitutional deliberate-indifference claim, a prisoner must demonstrate objective and subjective components.  He must show both that he is incarcerated under conditions posing a "substantial risk of serious harm" to his health or safety, and that the prison official in question had "a sufficiently culpable" subjective state of mind. *See id.*  To satisfy the subjective component, the prisoner must show that the defendant "perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded the risk."  *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

### (a) Snowden

As stated above, the Complaint alleges that in June to July of 2015, Nurse Snowden misdiagnosed sores on plaintiff's arm as allergies.  In July 2015, a nurse practitioner properly diagnosed the sores as scabies, but Nurse Smowden denied plaintiff medical treatment for it. In December 2017, Nurse Snowden refused plaintiff's request to see a doctor for a UC flare-up,

-7-

and lied on the paperwork to claim the plaintiff left the examination before it was completed.

Defendant argues that the 2015 claim is time-barred.  This Court agrees. A two-year statute of limitations applies to § 1983 actions arising in Ohio.  *Nader v. Blackwell,* 545 F.3d 459 (6th Cir. 2008) (citing *Browning v. Pendleton*, 869 F.2d 989 (6th Cir.1989).  "The question of when the statute of limitations beings to run is governed by federal law." *Hodge v. City of Elyria*, 126 Fed.Appx. 222 (6th Cir. 2005) (citing *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir.2001) and *Wilson v. Garcia*, 471 U.S. 261, 268-71 (1985)).  "Under federal law the statute begins to run when plaintiffs knew or should have known of the injury which forms the basis of their claims." *Id.*   The Sixth Circuit recognizes that this Court must "look at when the harm in question occurred, guided by the principle that 'a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.' " *Id.* (citations omitted).  Plaintiff knew in July 2015 that Nurse Snowden had misdiagnosed his scabies as allergies, and denied him medical treatment for it.  The Complaint was filed in November 2018. Therefore, this claim is barred by the two-year statute of limitations.

As for the allegation that Snowden refused plaintiff's request to see a doctor in December 2017 for a UC flare-up and lied on the paperwork, defendant argues that the claim is meritless. For the following reasons, this Court agrees.

Defendant submits the relevant medical records.  (Doc. 31 Ex. 1, 3) The records show that plaintiff was seen by Nurse Snowden on January 18, 2018.[1]  He complained of a cough, knee pain, and abdominal pain. The records show that Nurse Snowden addressed each of the three complaints, examining plaintiff for each complaint and making recommendations after a

---

[1]    Plaintiff was seen by two other nurses on December 9, 2017, and December 15, 2017, for symptoms of a cold.  (Doc. 31 Ex. 3)

discussion with plaintiff. Plaintiff was advised to return to the clinic if the symptoms did not improve. Nurse Snowden also noted that plaintiff refused a knee brace unless he had a bottom bunk restriction. Finally, Snowden noted, "Inmate walked out before complete exam could be completed even though inmate was encouraged to stay to complete exam." (Doc. 31 ex. 1) These facts simply do not show any deliberate indifference on Snowden's part. At most, plaintiff has a disagreement with his medical treatment which does not amount to an Eighth Amendment violation. *Bonga v. Abdellatif,* 2019 WL 4580389 (6th Cir. April 26, 2019):

> "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw,* 358 F.3d 377, 385 (6th Cir. 2004) (quoting *Westlake v. Lucas,* 537 F.2d 857, 860 n.5 (6th Cir. 1976)). "As a general rule, a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah v. Krisher,* 865 F.3d 361, 372 (6th Cir. 2017). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

> For these reasons, the Complaint must be dismissed as to defendant Snowden.

### (b) Hannah

Hannah was a Health Care Administrator at GCI. As stated above, the Complaint alleges the following pertaining to Hannah. Contrary to his single cell restriction, plaintiff was placed in an unsanitary dormitory in June 2016. He was threatened with retaliation based on Hannah's lies after plaintiff's family members called GCI. When he complained to Hannah in early 2017 about Douglas's failure to diagnose and treat his C-Diff infection, he was again threatened with retaliation. He was issued a cell-only restriction in June 2017, but Hannah tampered with his medical records and removed the restriction. In January 2018, Hannah conspired with other defendants to remove restrictions from his medical files.

Hannah argues that the claims asserted against him must be dismissed.  The Court agrees. As to allegations based on incidents occurring around June 2016, the two-year statute of limitations bars the claims. As for his allegations that he contracted C-Diff in early 2017, and Hannah threatened him with retaliation when plaintiff complained that the infection went untreated and undiagnosed, the medical records show otherwise. As discussed below, regarding the allegations made against Douglas, plaintiff was regularly monitored and assessed by GCI's medical personnel throughout early 2017 and through May 2017 when the C-Diff diagnosis was made at the  Ohio State University medical center. There is no evidence that plaintiff had the infection in January 2017 and that Douglas refused to diagnose or treat it. Nor is there evidence that Hannah threatened to retaliate against plaintiff for complaining of such.

The remaining allegations against Hannah relate to plaintiff's claims that Hannah tampered with his medical records in 2017 and 2018 to remove the restrictions regarding placement in a cell. However, Hannah's declaration testimony is undisputed. Hannah states that the cell restrictions are issued and ordered by Advanced Level Providers, not Health Care Administrators such as Hannah. Hannah also states that he did not tamper with the medical records, and would have been unable to do so inasmuch as the records are stored electronically and cannot be edited or altered. Cell restrictions are determined by medical staff, and Hannah states that he does not determine cell restrictions in his role as Health Care Administrator. These statements are not controverted.

For these reasons, plaintiff's Eighth Amendment claim against Hannah fails.

### (c) Douglas

Defendant Janice Douglas is a physician at GCI.  The claims against her include

-10-

allegations that plaintiff sought medical care in early 2017 for a C-Diff infection, but Douglas refused to test him and the infection went undiagnosed.  Instead, Dr. Douglas gave plaintiff "ineffective pills" for three months.  Ultimately, the infection was diagnosed by Ohio State University medical center in May 2017.  Finally, Douglas conspired with Hannah, Roberts, and Wesson in January 2018 to remove the cell-only restrictions from plaintiff's medical file.

Defendant argues that the medical records show that no Eighth Amendment violation occurred.  This Court agrees.

As evidenced by the medical records, beginning on January 6, 2017, plaintiff was seen multiple times in the GCI medical facility (Doc. 31 Ex.3) As summarized by defendant:

> On February 14, 2017, Plaintiff is seen for a flare-up with his colitis and is scheduled with a doctor. On February 17, 2017, is seen by Dr. Douglas who prescribes antibiotics, flagyl and prednisone. She also orders lab work. On March 7, 2017, Plaintiff complains of bloody stools and is scheduled to see a Doctor. On March 14, 2017, Plaintiff is seen by Dr. Douglas and he complains that he is having bloody stool again since stopping the prednisone. Dr. Douglas gives Plaintiff a Kenalog injection and increased his prednisone. She also prescribes mesalimine and Pepcid. She orders further labs. On March 30, 2017, Plaintiff's labs are normal and complains of intermittent bloody diarrhea. On April 13, 2017, Plaintiff complains again of diarrhea – labs are ordered again and a gastroenterology consult with diagnostic imaging is ordered. On April 24, 2014, Plaintiff is seen in a follow up and indicates he has not had rectal bleeding for three days. On May 8, 2017, Plaintiff complains of rectal bleeding after lifting a locker box. Plaintiff indicates he is in pain. Id. Plaintiff is given Imodium and pain medication. On May 15, 2017, Plaintiff is seen by the dietician and it is noted that Plaintiff has gained 14 lbs. and he is advised about a diet that prevents flare ups. On May 15, 2017, Plaintiff is seen by a Nurse Practitioner and complains of bloody stool. Plaintiff is told his consult was approved and he is given antibiotics and prednisone. Plaintiff is seen by GI tele-medicine per his consult who recommends he be admitted to OSU for further evaluation. On May 17, 2017, Plaintiff is taken to OSU – who diagnoses him with a UC flare-up and c-diff infection. Plaintiff is treated with antibiotics and the infection is successfully cleared on May 30, 2017.

(Doc. 31 at 7-8; Ex. 3 p. 2-52)

-11-

The Court agrees with defendant that the evidence shows that plaintiff was regularly monitored and assessed, and there is no evidence showing that plaintiff was infected with C-Diff in January 2017.  There is no evidence that Douglas knew about the infection, refused to test for C-Diff, and prescribed useless medication.  Nor is there any evidence that Douglas removed any restrictions from plaintiff's medical files.

Summary judgement is warranted on plaintiff's Eighth Amendment claim against Dr. Douglas.

**(2) Retaliation (Hannah, Wesson, Roberts, Douglas)**

Prisoners have a right under the First Amendment to engage in protected conduct without retaliation.  To establish a claim, a plaintiff must show that (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between the protected conduct and the adverse action taken.  *Smith v. Yarrow*, 78 F. App'x 529, 539 (6th Cir. 2003).

The Complaint alleges that these defendants made decisions or took actions against plaintiff regarding his housing or medical care because he filed grievances and complaints. In particular, plaintiff alleges that he was issued a cell-only, bottom bunk restriction in June 2017. But, he was left in the dorm and denied toilet paper in retaliation for his complaints.  Although he was moved to a cell, and out of the dorm, in December 2017, he was housed with animals which exacerbated his allergies. When he complained to Wesson and Roberts, they refused to move him because Hannah had removed restrictions from his medical files. In January 2018, plaintiff was moved back to the dorm after Hannah, Wesson, Roberts, and Douglas conspired to

-12-

remove the restrictions from his files. All this was done because he filed grievances and made complaints.

Defendants argue that plaintiff cannot show a causal connection between his grievances and the alleged adverse actions discussed herein.  This Court agrees.

As to any alleged retaliatory removal of medical restrictions from the records, the Court has already found that the evidence shows the medical records are stored electronically, are locked, and cannot be altered.

The evidence also shows that only medical staff determined cell restrictions based on medical needs, and Wesson and Hannah did not have the authority to determine an inmate's cell restriction or cell location.  (Wesson decl., Hannah decl.)   As a corrections counselor, Roberts did not have the authority to determine cell location either.  (Wesson decl.)

Additionally, Wesson, the Unit Manager where plaintiff was housed between December 2017 and January 2018, states that only inmates opting to be placed in the dog program were celled with dogs. And, the move sheet shows that plaintiff was moved to the D Unit in January 2018 which has a dormitory setting with bathrooms located near the inmate's bed.  Plaintiff does not dispute that the bed was located 15-20 seconds from the bathroom.

Finally, there is no evidence that Dr. Douglas retaliated against plaintiff. As discussed above, plaintiff's medical conditions were monitored and assessed by medical staff, including Douglas. Furthermore, the grievance records show that plaintiff complained on January 14, 2018, that he had been ordered a bottom bunk range restriction for all of 2018.  However, the response (written by a GCI employee not named as a defendant herein) stated that plaintiff's medical file showed that a nurse practitioner wrote a six month cell-only restriction order on

-13-

July 7, 2017.  The six months would have expired in January 2018.  On January 11, 2018, the order was discontinued by Dr. Douglas who documented that plaintiff, on that date, no longer qualified for the order and so it was discontinued.  The employee further noted that plaintiff had not had a bottom bunk/bottom range restriction since 2013 and, therefore, the order was outdated and no longer valid.  (Ex. 2) There is no evidence contradicting the validity of these statements and, thus, there is no evidence that any of the defendants retaliated against plaintiff for filing grievances or complaints.

 For these reasons, summary judgment is warranted in defendants' favor on the retaliation claim.

 **<u>Conclusion</u>**

 For the foregoing reasons, defendants Hannah, Douglas, Wesson, Roberts, and Snowden's Motion for Summary Judgment is unopposed and granted.

 IT IS SO ORDERED.


      /s/ Patricia A. Gaughan
      PATRICIA A. GAUGHAN
      United States District Court
Dated: 6/11/20   Chief Judge

-14-